# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| KEANNA GOCHET, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>vs.<br><br>FRANKLIN COLLECTION SERVICE, INC.,<br><br>        Defendant. | Case No.: 18-cv-560<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Keanna Gochet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a home telecommunications services bill.

5. Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6. Defendant Franklin Collection Service, Inc. ("FCS") is a foreign corporation with its primary offices located at 2978 W. Jackson St., Tupelo, MS 38801.

7. FCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. FCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. FCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. On or about November 22, 2017, FCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "AT&T." A copy of the letter is attached to this complaint as Exhibit A.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by hand.

12. Upon information and belief, Exhibit A is a form debt collection letter used by FCS to attempt to collect the alleged debt.

13. The alleged debt referenced in Exhibit A was incurred for personal telecommunications services. Thus, the alleged debt is an unsecured debt that was incurred for personal, family or household purposes.

*14.* The debt referenced in Exhibit A was not secured.

### *Illegible Balance*

15. Exhibit A states the balance of the alleged debt in a deceptive and misleading manner.

16. Exhibit A contains the following:

> YOUR DELINQUENT ACCOUNT WITH  AMOUNT DUE
> ATT                            262.19
>
> TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER
> PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN
> FULL TO FRANKLIN COLLECTION SERVICE, INC.

Exhibit A.

17. On the face of Exhibit A, it is impossible to determine the "Amount Due" --- because the amount was handwritten, the amount stated could be $261.19, $262.19, $263.19, $266.19, $267.19, or some other amount.

18. FCS exacerbates the confusion by directing the consumer to "return this notice with payment in full." Assuming the debtor actually tendered a $261.19 payment but FCS was actually attempting to collect some greater amount, the debtor would have no record of the amount stated in Exhibit A unless she happened to make a copy of Exhibit A.

19. Upon information and belief, FCS intentionally states the amount owed in a confusing and misleading manner to induce debtors to call them so that they may use high-pressure tactics to induce payment. *DeGeorge v. Fin. Recovery Servs.*, 2012 U.S. Dist. LEXIS 140966, at *25 (E.D. Penn. Sept. 27, 2012) (plaintiff stated claim that defendant engaged in unfair debt collection practices by sending letters that "required plaintiff to contact defendant to take advantage of a discount, thereby exposing plaintiff to additional pressures of in-person communication."); *see also, Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("trying to get through to an 800 number is often a vexing and protracted undertaking, and anyway, unless the number is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

### ***False litigation threat***

20. Exhibit A falsely threatens litigation against Plaintiff.

21. <u>Exhibit A</u> contains the following:

> WE HAVE MADE SEVERAL ATTEMPTS FOR YOU TO RESOLVE THIS MATTER VOLUNTARILY,

<u>Exhibit A</u>.

22. <u>Exhibit A</u> also contains the following:

> WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MANNER. AT THIS TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT OBTAINED.

<u>Exhibit A</u>.

23. Alongside the statement that FCS has "made several attempts for you to resolve this matter voluntarily," the unsophisticated consumer would interpret FCS' statements that: "We seldom resort to litigation if the account is resolved in a timely manner. At this time, there has been no civil action filed or judgment obtained," as a threat of imminent legal action.

24. <u>Exhibit A</u> represents that, after "several attempts for you to resolve this matter voluntarily," litigation may be imminent because the account has not been "resolved in a timely manner."

25. Debt collection letters that falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989).

26. A debt collector falsely threatens an alleged debtor when the debt collector threatens an action but does not intend to take that action for at least sixty days. *E.g., Talbott v. GC Servs. Ltd. P'ship*, 53 F. Supp. 2d 846, 852 n.2 (W.D. Va. May 26, 1999) ("violations have generally been where the letter issued falsely threatened legal action or threatened to make

4

immediate credit reports where none was to be made for at least 60 days."); *Creighton v. Emporia Credit Serv.*, 981 F. Supp. 411, 415 (E.D. Va. Oct. 9, 1997).

27. Even indirect or oblique threats of legal action give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136; *Bloodworth v. United Credit Serv.*, No. 15-cv-0502, 2016 U.S. Dist. LEXIS 49129 *4-6 (E.D. Wis. Apr. 12, 2016) ("This five-day deadline combined with the statement that delay would not be tolerated could give the unsophisticated consumer a sense that further action was imminent.").

28. FCS is an out-of-state debt collector and is not a law firm.

29. FCS has no ability to sue Plaintiff to collect an alleged debt owed to AT&T. AT&T would be the real party in interest in any lawsuit.

30. Moreover, FCS has no insight into or control over AT&T's litigation strategies.

31. Upon information and belief, FCS had no knowledge whether AT&T intended to sue Plaintiff or any class member to collect the alleged debts.

32. A search of CCAP reveals that, as of March 28, 2018, AT&T had not sued Plaintiff to collect the alleged debt identified in <u>Exhibit A</u>.

33. The alleged debt referenced in <u>Exhibit A</u> is in an amount of about $262.19.

34. Upon information and belief, at the time <u>Exhibit A</u> was mailed, AT&T had no intention to sue Plaintiff to collect a $262.19 debt.

35. Even if the unsophisticated consumer did not perceive the statement that "**We** seldom resort to litigation" (emphasis added) as a threat of imminent legal action, it is a material representation that statement that FCS does, in fact, sue consumers in Wisconsin courts.

36. Upon information and belief, FCS does not sue consumers in Wisconsin courts.

5

37. A search of CCAP reveals that, as of February 26, 2018, there were no lawsuits filed in the Wisconsin courts by any entity named "FCS," "Franklin Collection Service," or "Franklin Collection Service, Inc."

38. Even if the consumer would not believe that a lawsuit was imminent, FCS' false representation that "we seldom resort to litigation" is a material misrepresentation that would factor into the unsophisticated consumer's prioritization of her debts.

39. <u>Exhibit A</u> also contains the following:

☐ Employment Verified
☐ Assets Located

<u>Exhibit A</u>.

40. <u>Exhibit A</u> represents to the unsophisticated consumer that FCS is regularly engaged in investigative work, including verifying alleged debtors' employment and assets.

41. <u>Exhibit A</u> threatens the unsophisticated consumer with the prospect that FCS will conduct investigate the alleged debtor's employment history, sources of income, and assets.

42. Upon information and belief, FCS does not regularly conduct investigative work to determine debtors' employment and/or income status.

43. Upon information and belief, neither AT&T nor FCS intended for FCS to conduct investigative work to determine Plaintiff's employment and/or income status.

44. Upon information and belief, FCS does not regularly conduct investigative work to determine the extent and location of debtors' assets.

45. Upon information and belief, neither AT&T nor FCS intended for FCS to conduct investigative work to determine the extent and location of Plaintiff's assets.

46. <u>Exhibit A</u> falsely represents or implies that nonpayment of the debt FCS is attempting to collect will result in the seizure, garnishment, attachment, or sale of the consumer's

property or wages, even though FCS does intend to take such action and has no knowledge or belief as to whether AT&T intends to take such action.

47. Exhibit A falsely represents or implies that nonpayment of the debt FCS is attempting to collect will result in nonjudicial action to effect dispossession of Plaintiff's personal property to satisfy an unsecured debt.

48. The false representations that FCS regularly verifies employment and locates assets are made with the purpose and effect of inducing anxiety in the unsophisticated consumer, and increasing the priority of the debts that FCS is collecting under false pretenses. *See, eg. Beasley v. Collectors Training Inst., Inc.*, No. 98 C 8113, 1999 U.S. Dist. LEXIS 13275 *6-7 (N.D. Ill. Aug. 17, 1999) ("In sum, defendants' brief search was contrary to the intrusive pursuit avowed in the letter and belies an intent to comply with the letter's warnings.")

49. Plaintiff was confused by Exhibit A.

50. The unsophisticated consumer would be confused by Exhibit A.

51. Plaintiff had to spend time and money investigating Exhibit A.

52. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### The FDCPA

53. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

7

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

54. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

55. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

56. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

57. 15 U.S.C. § 1692e(4) specifically prohibits "the representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any

9

property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

58. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

59. 15 U.S.C. § 1692e(6)(B) specifically prohibits "the false representation that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by this subchapter."

60. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692f generally prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."

62. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

63. 15 U.S.C. § 1692f(6) specifically prohibits "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if---

    (A)    There is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B)    There is no present intention to take possession of the property; or

    (C)    The property is exempt by law from such dispossession or disablement.

### *The WCA*

10

Case 2:18-cv-00560-JPS   Filed 04/10/18   Page 10 of 16   Document 1

64. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

65. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

66. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

67. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

68. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

69. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

11

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

70. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

71. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

72. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

73. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

74. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

75. Wis. Stat. § 427.104(1)(L) specifically prohibits a debt collector from "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. The balance stated in Exhibit A is illegible.

78. Exhibit A states the balance in a deceptive and confusing manner.

79. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692f(1).

## COUNT II – FDCPA

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Exhibit A states that FCS has "made several attempts for you to resolve this matter voluntarily."

82. Exhibit A further states that, while FCS has not filed a suit "at this time," it resorts to litigation when accounts are not "resolved in a timely manner."

83. Exhibit A threatens litigation against the recipient.

84. FCS, in fact, had no authority or ability to sue Plaintiff to collect a debt allegedly owed to AT&T.

85. FCS does not, in fact, "seldom resort to litigation" in the Wisconsin courts because FCS is not authorized to practice law in the State of Wisconsin.

86. AT&T has not yet sued Plaintiff and has no intention to sue Plaintiff for this debt.

87. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

## COUNT III – FDCPA

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. <u>Exhibit A</u> falsely threatens the consumer with an intrusive investigation into her employment and income status.

90. <u>Exhibit A</u> falsely threatens the consumer with nonjudicial dispossession of her personal property to satisfy an unsecured debt.

91. Defendant violated 15 U.S.C. §§ 1692e, 1692e(4), 1692e(5), 1692e(6), 1692e(10), 1692f, and 1692f(6).

## COUNT IV – WCA

92. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93. <u>Exhibit A</u> falsely represents that FCS would sue Plaintiff.

94. In fact, FCS had no authority to sue Plaintiff, and AT&T had not determined whether it would sue Plaintiff or any class member when <u>Exhibit A</u> was mailed to the class.

95. <u>Exhibit A</u> falsely threatens the consumer with an intrusive investigation into her employment and income status.

96. <u>Exhibit A</u> falsely threatens the consumer with nonjudicial dispossession of her personal property to satisfy an unsecured debt.

97. FCS violated Wis. Stat. § 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

98. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or

household purposes, (d) between April 10, 2017 and April 10, 2018, inclusive, (e) that was not returned by the postal service.

99. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

100. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

101. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

102. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

103. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

104. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 10, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com